# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Laborde | Civil Action No. 16-00734 |
| versus | Judge Robert G. James |
| Northwestern Mutual Life Insurance Co | Magistrate Judge Carol B. Whitehurst |

## REPORT AND RECOMMENDATION

Before the Court is a Motion For Summary Judgment filed by defendant, Northwestern Mutual Life Insurance Company ("Northwestern") [Rec. Doc. 25], plaintiff, Kenneth J. Laborde's ("Laborde"), Memorandum in Opposition [Rec. Doc. 27] and Northwestern's Reply thereto [Rec. Doc. 30]. For the following reasons, the undersigned will recommend that the Motion be denied.

### *I. Background*

This is an action filed by Plaintiff Kenneth J. Laborde, M.D.'s ("Laborde") for disability income insurance benefits against defendant Northwestern. Dr. Laborde is a surgeon who began his practice in 1981 in Lafayette after completing specialty training in microsurgery, with a primary specialty focus of microsurgery of the hand. *R. 27-1, Depo of Laborde, pp. 9-10*. Shortly after locating his medical practice in Lafayette, Laborde was approached by Chris Gamble, a Northwestern insurance sales agent. *Id., p. 49*. Laborde advised Gamble that he wanted to purchase a disability policy specifically to insure his ability to perform microsurgery of the hand. *Id., p. 49*. Northwestern informed Gamble that it would not write a policy to specifically cover Laborde's ability to perform microsurgery of the hand. *Id., pp. 49-50*. Upon contacting other insurers, Gamble was unable to find an insurance company who

would agree to issue a disability policy which would insure such a specific medical specialty. *Id.*, *p. 50*. Ultimately, Gamble negotiated with Northwestern to issue a policy to insure Dr. Laborde's ability to perform microsurgery. *Id.*

Northwestern issued the first policy of insurance, policy D-212-419, to Laborde on March 2, 1981. *R. 27-2, R. 27-5, Policy D-212-419*. Section 7.1 of the Policy provided that the application for the policy forms part of the insurance contract. The provision stated:

> 7.1 ENTIRE CONTRACT; CHANGES
> This policy *with the application and attached endorsements* is the entire contract between the Owner and the Company. . . .

*Id., p. 8*. (emphasis added). Gamble hand wrote into the application the following information confirming that Laborde was a "microsurgeon" for insurance purposes:

> (1) What is your occupation(s) and what are your duties?
> Surgeon - Micro surgery of the hand.
>
> . . . .
>
> REMARKS:
> Dr. Laborde just went into practice. His "own occ" is micro surgery, not just general surgery. This is the area he was trained in.

The language was accepted by Northwestern and made part of the insurance contract. *Id., p. 9, 12*. The policy provided for a monthly benefit of $2,000.00 until March 2, 2017, but for not less than twenty-four (24) months, in the event Laborde lost his ability to perform his own occupation. *Id., p. 3*.

The following year, Gamble approached Dr. Laborde to offer an additional policy to increase the coverage. *R. 27, p.8*. On April 7, 1982, Northwestern issued a second policy, D-253-131, which added an additional monthly benefit of $1,500.00,

effective until April 7, 2017. *R. 27-3, Policy D-253-131, p. 3*. The occupation and duties insured under the policy stated, "Surgeon-micro surgery of the hand." *Id., p. 20*.

In the fall of 1982, Gamble, again approached Laborde to offer increased insurance by Northwestern to protect Dr. Laborde's occupation as a microsurgeon. *R. 27, p.8*. On November 2, 1982, Northwestern issued a third policy, D-278-858, which added an additional monthly benefit of $2,500.00, effective until November 2, 2016. *R. 27-4, Policy D-278-858, p. 3*. The occupation and duties insured under the policy stated, "Medical Doctor micro surgery of the hand." *Id., p. 18*.

In 1987, Gamble approached Dr. Laborde to purchase an additional policy to provide greater protection for Dr. Laborde's occupation as a microsurgeon. *R. 27, p.8*. On March 2, 1987, Northwestern issued a fourth policy, D-515-969, which added an additional monthly benefit of $4,100.00 at its inception, with step increases annually, effective until March 2, 2017. *R. 27-5, Policy D-515-969, p. 3*.

In 1988, Gamble approached Laborde to purchase an additional Northwestern policy to protect his ability to perform microsurgery. *R. 27, p.8*. On October 2, 1988, Northwestern issued a fifth policy, D-622-254, which added an additional monthly benefit of $1,750.00 at its inception, with step increases annually, effective until October 2, 2016. *R. 27-6, Policy D-622-254, p.4*.

In 1989, Gamble approached Laborde to purchase an additional policy to protect his ability to perform microsurgery. *R. 27, p.8*. On August 2, 1989, Northwestern issued a sixth policy, D-687-094, which added an additional monthly

benefit of $1,000.00 at its inception, with step increases annually, effective until August 2, 2016. *R. 27-7, Policy D-687-094, p.3.*

Laborde testified that in March of 2014, he developed a 90% rotator cuff tear in his right shoulder. *R. 27-1, Depo. of Laborde, pp. 11-14*. He stated that the condition caused him to experience persistent pain and tremors in his right shoulder and arm. *Id., pp. 11*. Prior to the development of his shoulder problem, Laborde stated he was performing between 48 and 72 surgeries each month, including complex surgeries. *Id., p. 60*. Laborde stated that his shoulder condition has rendered him totally disabled from performing microsurgery and other complex surgical procedures. *Id., p. 18*. He further stated that he is unable to take emergency call for potential complex surgery or micro surgery cases. *Id., pp. 53-54*. Laborde stated that his disabling conditions have compounded to the point that he can no longer earn a living. *R. 27-1, pp. 84-86*. He avers that his salary has steadily dropped to the point that he has not received a salary for his work since June 1, 2015. *Id.*

Laborde filed a claim with Northwestern under his disability policies on or about April 1, 2014. *R. 25-2; R. 27-1*. In his initial claim, Laborde sought benefits under his disability policies because his medical condition rendered him completely disabled in his medical specialty of microsurgery as of March 11, 2014. *R. 25-11*. By letter dated July 30, 2014, Northwestern notified Laborde that his claim for total or partial disability benefits was denied. *Id.* Northwestern indicated that the policies "do not contain a 'specialized definition' of your occupation as a 'micro-surgery of the hand'." *Id., p. 2*. Northwestern further stated that the CPT codes for the micro surgical

4.

procedures Laborde had submitted were not complete and Laborde had "declined to provide the [complete] information." *Id., p. 3*.

Laborde filed this lawsuit on May 26, 2016 against Northwestern for breach of contract. *R. 1*. At the time suit was filed, Laborde alleged that he had suffered damages of at least $836,274.38, exclusive of interest. *Id*.

## II. Contentions of the Parties

In its Motion, Northwestern contends that Dr. Laborde is neither totally nor partially disabled due to his shoulder injury because he is not "unable to perform the principal duties of his occupation that he was actually engaged in at the time of his disability" as required by the policies. Northwestern asserts that, at the time he filed his disability claim, Laborde's principal duties were general surgery and not microsurgery as Laborde contends. Northwestern further contends that it considered the CPT codes[1] provided by Laborde as evidence of the micro surgical procedures he had performed from 2006 to 2014, and found there to be only five such procedures..

Dr. Laborde contends that Northwestern's policies which he purchased over eight years for thousands of dollars, all provided that he would receive disability benefits in the event he was completely disabled from his occupation as a microsurgeon. He asserts that Northwestern has not presented any language in the policies which conditions any determination, including entitlement to benefits, on CPT billing codes. He further asserts that the opinions of Northwestern's claims adjusters fail to establish that the policy language obligated Laborde to retain CPT code billing

---

[1] CPT codes are codes created by insurance companies to reference certain medical operations and procedures. *R. 25- .Depo. of Laborde, p. 29*.

records or that they play any part whatsoever in determining an insured's entitlement to benefits. Rather, Laborde maintains, Northwestern represented that the disability policies were issued to insure Laborde's occupation as a microsurgeon.

### *III. Motion For Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[2] *Id.* at 322-23.

---

[2] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(c). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

*IV. Analysis*

Northwestern essentially argues that there is no material issue of fact as to Laborde's occupation because he was at all pertinent times a general surgeon

performing some micro surgical procedures. According to Northwestern, Laborde's claim as to partial and/or total disability was denied because his claimed disability, the shoulder injury, does not prevent him from performing his principal occupation duties as of the date of his alleged disability—a general surgeon.

Under Louisiana law, "[a]n insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Pioneer Expl.,* 767 F.3d 512 (quoting *Reynolds v. Select Props., Ltd.*, 634 So.2d 1180, 1183 (La. 1994)). If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Id.* (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)).

If the insurance contract terms are ambiguous, these ambiguities are generally strictly construed against the insurer and in favor of coverage. *Id*. (citing *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1994)). This rule of strict construction applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. *Id*. (quoting *Cadwallader*, 848 So.2d at 580)." *Richard v. Anadarko Petroleum Corporation*, 850 F.3d 701, 713 (5th Cir., 2017) (internal quotations omitted).

The record provides that the terms of all of Laborde's policies in question consistently state that "the Insured is totally disabled when he is unable to perform

8.

the *principal duties of his occupation*." *R. 25-5 – 25-10*. All policies state that "his occupation" means "the occupation of the Insured at the time he becomes disabled. If the Insured is regularly engaged in more than one occupation, the words 'his occupation' include all of the occupations of the Insured at the time he becomes disabled." *Id.* The parties do not dispute the terms of the policy. Rather, they dispute their application as to Laborde's occupation as a microsurgeon.

Northwestern states that in order to assist it in establishing whether microsurgery could be considered a pre-disability principal duty of Laborde's occupation, it requested a complete listing of pre-disability and post-disability CPT codes that reflected Laborde's work and billing activities of the micro-surgical procedures he had performed. *R. 25-4.* Laborde stated in his deposition that, after Northwestern requested the CPT codes, he sent "some of the recent ones as a sample." *R. 25-12, p. 38*. Laborde further stated that he and his secretary searched their memories as well as "a few cases" and sent them to Northwestern. *Id. at p. 40–41.* Laborde explained that he does not keep accurate or complete records of the specific number of complex hand cases he treated and could not give an accurate number. *Id. at p. 59.* The CPT codes submitted by Laborde were for the following dates: May 24, 2006; May 9, 2011; March 28, 2012; September 13, 2012; and June 13, 2013. *R. 25-4.* A medical consultant for Northwestern reviewed the codes and then informed Laborde that complete codes were needed to appropriately review the activities of his practice. *Id.* Northwestern requested complete codes from Laborde, but he did not provide additional information. *Id.* As a result, Northwestern considered these five CPT codes

to represent all of the micro surgical procedures Laborde performed from 2006 through 2014, and completed its review of Laborde's occupation with the information it had on file. Even though Laborde described his occupation as "microsurgery, not just general surgery" in his original disability insurance application, Northwestern's claims adjuster opined that microsurgery actually played such a small role in Laborde's practice that it could not be considered a "principal duty" of "his occupation" as provided in the policies.

Laborde argues that the disability policies at issue in this case contain "absolutely no obligations whatsoever" that the policy holder retain and/or provide CPT billing codes for its medical services in connection with a disability claim. As such, Northwestern cannot avoid the payment of benefits under the policies based solely upon Laborde's lack of billing code records. Rather, Laborde argues the original policy specifically stated that his insurance coverage is based on his occupation as a "surgeon–micro surgery of the hand," and that "His 'own occ' is micro surgery not just general surgery. This is the area he was trained in." *R. 27-5, Policy D-212-419*. Thereafter, the additional policies either included the notation that Laborde's occupation was a "microsurgeon of the hand" or made no change as to his occupation or his specialty. *R. 25-6, 25-7, 25-8, 25-9, 25-10*. All of the policies were signed by Gamble as the Agent. *Id.*

The record provides that Gamble knew Laborde was establishing a practice based on his recent training as a microsurgeon of the hand, and was only interested in an insurance policy that insured this specialty. Because Gamble was Northwest-

ern's agent, and certainly because he "negotiated" with Northwestern to issue Laborde's original policy, Northwestern knew that Laborde was just starting his practice and that there was no evidence, i.e. CPT billing codes, to support the policy's specification that Laborde's occupation was a micro surgeon.[3] Despite that knowledge, Northwestern accepted Laborde's premiums and later allowed him to purchase additional policies to increase his coverage, for which Laborde paid higher premiums. During the years of increasing Laborde's coverage and accepting premiums, Northwestern never questioned Laborde's specified occupation. Nor did Northwestern ever indicate to Laborde that he would be required to produce CPT codes related to his microsurgery procedures.

Laborde cites the case *Natarajan v. Paul Revere Life Ins. Co.*, 720 F.Supp.2d 1321 (M.D.Fla.,2010) in support of his argument. In *Natarajan*, a disability insurer attempted to use a CPT code analysis to support a motion for summary judgment asserting that the plaintiff, an invasive cardiologist, was in fact not an invasive cardiologist because only 12% of his patient encounters were invasive procedures, and because invasive procedures only accounted for 25% of all billing charges prior to the onset of disability. *Id.* at 1325. The court found that the CPT analysis approach was only one possible means of evaluating a disability claim, subject to a credibility determination by the trier of fact, and was not dispositive for summary judgment purposes. *Id.* at 1328.

---

[3] An insurer is bound by the acts and knowledge of its agent in completing an insurance application. *Tiner v. Aetna Life Insurance Co.*, 291 So.2d 774, 777 (La.1974).

Laborde contends that Northwestern's focus solely on CPT codes in determining a disability claim such as in this case is an attempt to re-define a policy holder's occupation under the policies. It argues that in *Natarajan,* the court stated that the insurer should also consider the plaintiff's board certification related to his specialty, his own deposition testimony as to what his occupation was prior to the onset of his disabling condition and the effect of the condition on his ability to continue to practice his specialty. The Court agrees.

Here, Laborde's testimony as well as the record provides that he is trained in micro surgery of the hand. In obtaining insurance to cover this specialty occupation, Northwestern's agent, Gamble, specifically contacted Northwestern to insure Laborde's occupation as a microsurgeon and Northwestern specifically agreed, as evidenced by the handwritten notations and remarks in the original application and policy. Thereafter, Gamble approached Laborde annually for five years to increase the amount of his disability coverage for his occupation as a microsurgeon. In increasing his disability coverage, Laborde paid Northwestern "hundreds of thousands of dollars." It was not until after Laborde contacted Northwestern that he had become disabled from performing his occupation as a microsurgeon that Northwestern informed Laborde that it did not consider him to be a "microsurgeon" under the terms of the policies sold to him. In making that determination, Northwestern relied solely on a limited CPT analysis.

Whether Laborde is totally disabled and unable to perform the important duties of his "occupation," however, is a factual dispute. The Court finds that, drawing all

inferences from the evidence in the light most favorable to Laborde, the non-movant, and resolving all reasonable doubts in Laborde's favor, there are genuine issues of material facts as to whether or not Laborde was a microsurgeon at the time of his disability such that he was entitled to total disability benefits under his policy.

*IV. Conclusion*

For the foregoing reasons, the undersigned recommends that the Motion For Summary Judgment filed by Northwestern Mutual Life Insurance Company [Rec. Doc. 25] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 7th day of August, 2017.

                                                                        *[signature]*
                                                                **CAROL B. WHITEHURST**
                                                                **UNITED STATES MAGISTRATE JUDGE**